WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sandra C. Tomlinson, | No. CV-14-08190-PCT-ESW |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Sandra C. Tomlinson's ("Plaintiff") appeal of the Social Security Administration's ("Social Security") denial of her claim for disability benefits.  Plaintiff filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act.  Plaintiff alleges disability beginning on August 2, 2002.

This Court has jurisdiction to decide Plaintiff's appeal pursuant to 42 U.S.C. §§ 405(g), 1383(c).  Under 42 U.S.C. § 405(g), the Court has the power to enter, based upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing.  Both parties have consented to the exercise of U.S. Magistrate Judge jurisdiction.  (Doc. 12).  After reviewing the Administrative Record ("A.R."), Plaintiff's

Opening Brief (Doc. 23), and Defendant's Response Brief (Doc. 25),[1] the Court finds that the Administrative Law Judge's ("ALJ") decision contains harmful legal error.  For the reasons explained in Section II below, the decision is reversed and the case is remanded to the Commissioner of Social Security for further administrative proceedings.

## I. LEGAL STANDARDS

### A.  Disability Analysis:  Five-Step Evaluation

The Social Security Act (the "Act") provides for disability insurance benefits to those who have contributed to the Social Security program and who suffer from a physical or mental disability.  42 U.S.C. § 423(a)(1).   The   Act   also   provides   for Supplemental Security Income to certain individuals who are aged 65 or older, blind, or disabled and have limited income.  42 U.S.C. § 1382.  To be eligible for benefits based on an alleged disability, the claimant must show that he or she suffers from a medically determinable physical or mental impairment that prohibits him or her from engaging in any substantial gainful activity.  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(A)(3)(A). The claimant must also show that the impairment is expected to cause death or last for a continuous period of at least 12 months.  *Id*.

To decide if a claimant is entitled to Social Security benefits, an ALJ conducts an analysis consisting of five questions, which are considered in sequential steps.  20 C.F.R. §§ 404.1520(a), 416.920(a).  The claimant has the burden of proof regarding the first four steps:[2]

> **Step One**:  Is the claimant engaged in "substantial gainful activity"?  If so, the analysis ends and disability benefits are denied.  Otherwise, the ALJ proceeds to step two.

> **Step Two:** Does the claimant have a medically severe impairment  or  combination  of  impairments?    A  severe

---

[1] Plaintiff did not file a Reply.

[2] *Parra v. Astrue*, 481 F.3d 742,746 (9th Cir. 2007).

impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied at this step.  Otherwise, the ALJ proceeds to step three.

**Step Three:** Is the impairment equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(d), 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step of the analysis.

**Step Four:**  Does the impairment prevent the claimant from performing work which the claimant performed in the past?  If not, the claimant is "not disabled" and disability benefits are denied without continuing the analysis.   20 C.F.R. §§ 404.1520(f), 416.920(f).  Otherwise, the ALJ proceeds to the last step.

If the analysis proceeds to the final question, the burden of proof shifts to the Commissioner:[3]

**Step Five:** Can the claimant perform other work in the national economy in light of his or her age, education, and work experience?  The claimant is entitled to disability benefits only if he or she is unable to perform other work. 20 C.F.R. §§ 404.1520(g), 416.920(g).  Social Security is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's residual functional capacity, age, education, and work experience. *Id.*

---

[3] *Parra*, 481 F.3d at 746.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.  Standard of Review Applicable to ALJ's Determination**

The Court must affirm an ALJ's decision if it is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990).   Although "substantial evidence" is less than a preponderance, it is more than a "mere scintilla."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)).   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id*.

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusions.  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993).  If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination.  *See Morgan v. Comm'r of the Social Sec. Admin*., 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  This is because the ALJ, not the Court, is responsible for resolving conflicts and ambiguities in the evidence and determining credibility.  *Magallanes*, 881 F.2d at 750; *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court also considers the harmless error doctrine when reviewing an ALJ's decision.   This doctrine provides that an ALJ's decision need not be remanded or reversed if it is clear from the record that the error is "inconsequential to the ultimate nondisability determination."  *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (citations omitted); *Molina*, 674 F.3d at 1115 (an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion") (citations omitted).

## II.  PLAINTIFF'S APPEAL

### A.  Procedural Background

Plaintiff, who was born in 1971, has worked as a hotel desk clerk and dispatcher. (A.R. 36, 54, 198).   In 2002, Plaintiff's then ten-year old son was involved in an automobile accident that left him severely brain-damaged and disabled.  (A.R. 36-37). Plaintiff was not in the accident.  (A.R. 47).

On April 27, 2006, Plaintiff filed a Title II application for disability insurance benefits and a Title XVI application for supplemental security income benefits.  (A.R. 198-202, 203-09).   Plaintiff's applications allege that on August 2, 2002, she became unable to work due to the following impairments: (i) bipolar disorder; (ii) post-traumatic stress disorder ("PTSD"); (iii) shoulder injuries; and (iv) diabetes.  (A.R. 126).   Social Security denied both applications on October 31, 2006.  (A.R. 114-16, 117-20).   On October 12, 2007, upon Plaintiff's request for reconsideration, Social Security affirmed the denial of Plaintiff's application.  (A.R. 123-25, 126-29).  Plaintiff then requested a hearing before an ALJ.  (A.R. 131).  The ALJ who conducted the hearing denied Plaintiff benefits in February 2010.  (A.R. 88-105).   Upon Plaintiff's request for review, the Appeals Council remanded the case for another hearing.  (A.R. 106-13).

On January 23, 2013, another ALJ held Plaintiff's second administrative hearing. (A.R. 33-58).   In her March 15, 2013 decision, the ALJ found that Plaintiff is not disabled.  (A.R. 11-32).   The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Social Security Commissioner.  (A.R. 1-7).  On October 7, 2014, Plaintiff filed a Complaint (Doc. 1) pursuant to 42 U.S.C. § 405(g) requesting judicial review and reversal of the ALJ's decision.

### B.  The ALJ's Application of the Five-Step Disability Analysis

The ALJ completed all five steps of the disability analysis before finding that Plaintiff is not disabled and entitled to disability benefits.

### 1.  Step One: Engagement in "Substantial Gainful Activity"

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since September 30, 2007.  (A.R. 16).  Neither party disputes this determination.

### 2.  Step Two: Presence of Medically Severe Impairment/Combination of Impairments

The ALJ found that Plaintiff has the following severe impairments: (i) morbid obesity; (ii) asthma; (iii) bipolar disorder; (iv) PTSD; (v) nightmare disorder and panic disorder with agoraphobia; (vi) major depressive disorder; (vii) diabetes mellitus; and (viii) peripheral neuropathy.  (A.R. 17).  The ALJ's step two determination is undisputed.

### 3.  Step Three: Presence of Listed Impairment(s)

The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Social Security regulations.  (A.R. 18).  Neither party disputes the ALJ's determination at this step.

### 4.  Step Four:  Capacity to Perform Past Relevant Work

The ALJ found that Plaintiff has retained the residual functional capacity ("RFC") to perform light exertional work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that:

> [Plaintiff] must avoid exposure to flumes [sic], odors, dusts, gases and high humidity; can only occasionally climb ladders, ropes and scaffolds; is limited to occupations requiring no more than simple, routine, repetitive tasks involving only simple work related decisions and relatively few work place changes; and her work can require no more than occasional interaction with others.

(A.R. 19-20).   After considering the testimony of a vocational expert ("VE") and Plaintiff's RFC, the ALJ determined that Plaintiff is unable to perform her past relevant work as a front desk clerk and dispatcher.  (A.R. 23).

Plaintiff argues that the ALJ erred at step four by improperly weighing the opinions of certain medical sources and discrediting Plaintiff's subjective complaints.

(Doc. 23 at 2).  The Court finds that the ALJ committed harmful legal error by failing to provide (i) specific and legitimate reasons for giving little weight to Drs. Gene Berg and Rogelio Naranja's opinions and (ii) clear and convincing reasons for rejecting Plaintiff's testimony regarding her symptoms.

### 5.  Step Five: Capacity to Perform Other Work

At the final step, the ALJ found that Plaintiff is able to perform other jobs existing in significant numbers in the national economy.  (A.R. 24).  In making this finding, the ALJ relied on the Medical-Vocational Guidelines.  Because the ALJ committed harmful legal error at step four in assessing Plaintiff's RFC, the ALJ's determination at step five is also erroneous.

### C.  Plaintiff's Challenge at Step Four

#### 1.  The ALJ Failed to Give Specific and Legitimate Reasons for Discounting Drs. Gene Berg and Rogelio Naranja's Opinions

In weighing medical source opinions in Social Security cases, there are three categories of physicians: (i) treating physicians, who actually treat the claimant; (ii) examining physicians, who examine but do not treat the claimant; and (iii) non-examining physicians, who neither treat nor examine the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  An ALJ must provide clear and convincing reasons that are supported by substantial evidence for rejecting the uncontradicted opinion of a treating or examining doctor.  *Id.* at 830-31; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  An ALJ cannot reject a treating or examining physician's opinion in favor of another physician's opinion without first providing specific and legitimate reasons that are supported by substantial evidence, such as finding that the physician's opinion is inconsistent with and not supported by the record as a whole.  *Bayliss*, 427 F.3d at 1216; 20 C.F.R. § 404.1527(c)(4) (an ALJ must consider whether an opinion is consistent with the record as a whole); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir.

2002); *Tommasetti*, 533 F.3d at 1041 (finding it not improper for an ALJ to reject a treating physician's opinion that is inconsistent with the record).

### i. Opinions of Dr. Shelly Woodward and Non-Examining Psychologists

In her Opening Brief, Plaintiff argues that the ALJ committed harmful error by failing to address the opinions of Dr. Shelly Woodward and non-examining psychologists Drs. Adrianne Galluci and Stephen Fair. (Doc. 23 at 21-22). As Defendants point out in their Response (Doc. 25 at 20-24), the ALJ did address those opinions.[4] (A.R. 17, 19, 23). Plaintiff has not made any alternative argument regarding the ALJ's assignment of weight to Drs. Woodward, Galluci, and Fair's opinions. The Court thus deems the issue abandoned. *See Leer v. Murphy,* 844 F.2d 628, 634 (9th Cir. 1988) (deeming abandoned all issues raised in a brief not supported by argument); *Grewal v. Choudhury,* 377 F. App'x 617 (9th Cir. 2010) (undeveloped issue not supported by argument is deemed abandoned).

### ii. Dr. Gene Berg

On November 8, 2012, psychologist Dr. Gene Berg examined Plaintiff pursuant to a referral from Plaintiff's attorney. (A.R. 978-988). Dr. Berg explained that Plaintiff obtained a score of forty-seven on the Beck Depression Inventory, "which is consistent with a severe level of depression and significant personal discomfort." (A.R. 987). Based on his examination and review of Plaintiff's medical records, Dr. Berg opined that Plaintiff would miss more than three days of work each month. (A.R. 984). Dr. Berg also opined that Plaintiff "would not be able to work a full time job in the next year." (A.R. 987). Because Dr. Berg's medical opinion was contradicted by another acceptable medical source,[5] the Court must determine whether the ALJ offered specific and legitimate reasons for discounting Dr. Berg's medical opinion.

---

[4] Although the ALJ's decision does not explicitly mention Drs. Galluci and Fair's names, the decision references Exhibits 3F-5F and 15F-16F, which contain Drs. Galluci and Fair's reports. (A.R. 396-426, 481-98).

[5] Dr. Berg's opinion is contradicted by Drs. Galluci and Fair, who opined that

The ALJ gave two reasons for giving Dr. Berg's opinion little weight. The ALJ first discounted Dr. Berg's findings because they "were based on a one-time evaluation" of Plaintiff. However, the opinions of examining physicians and psychologists must be considered by the ALJ. *See* 20 C.F.R. § 404.1527; *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). Examining medical sources frequently only evaluate a claimant on one occasion. Hence, the mere fact that an examining medical source conducts a "one-time evaluation" is not itself a valid reason for rejecting that source's opinion. *See Henderson v. Astrue*, 634 F.Supp.2d 1182, 1192 (E.D. Wash. 2009) (holding that an ALJ's implication that a medical source's opinion should be rejected in part because they are based on one-time exams is erroneous).

Defendants urge the Court to liberally construe the ALJ's first reason for discounting Dr. Berg's opinion, arguing that the ALJ "properly determined that in light of the record as a whole Dr. Berg's opinion was unpersuasive because it was 'based on a one-time evaluation of the claimant.'" (Doc. 25 at 20). The Ninth Circuit has clearly instructed that a court "cannot substitute [the court's] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions. Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Brown-Hunter v. Colvin*, --F.3d ----, 2015 WL 6684997, *7 (9th Cir. Nov. 3, 2015) (quoting *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1103 (9th Cir. 2014). Defendants are correct that an ALJ does not need not "recite magic words." Yet the ALJ in this case stated in a single sentence that Dr. Berg's assessment is discounted "because the findings therein were based on a one-time evaluation of [Plaintiff]." (A.R. 23). The ALJ failed to provide any additional analysis that would allow the Court to meaningfully review the ALJ's conclusion without speculating as to the ALJ's reasoning. The Court finds that the ALJ's first reason for discounting Dr. Berg's opinion is not specific and legitimate.

Plaintiff could perform simple work on a full-time basis. (A.R. 398, 497).

The ALJ's second reason for discounting Dr. Berg's opinion is that "Dr. Berg's evaluation took place at the request of counsel and [Plaintiff] was referred to the doctor by counsel's law firm . . . ." (A.R. 23).  Defendants do not address Plaintiff's argument that this is an invalid reason for discounting a medical source's opinion.  Indeed, the Ninth Circuit has held that "in the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it." *Reddick*, 157 F.3d at 726; *Lester,* 81 F.3d 832 (absent "evidence of actual improprieties," examining doctor's findings entitled to no less weight when examination procured by the claimant than when obtained by the Commissioner).  Accordingly, the fact that Dr. Berg's evaluation was obtained at the request of Plaintiff's counsel is not a sufficient sole basis for discounting Dr. Berg's opinion.

For the above reasons, the Court concludes that the ALJ failed to provide specific and legitimate reasons for discounting Dr. Berg's opinion.

### iii.  Dr. Rogelio Naranja

Similar to Dr. Berg, Plaintiff's treating psychiatrist Dr. Rogelio Naranja opined in 2012 that Plaintiff's mental condition impedes her ability to sustain full-time employment.  (A.R. 345).  Dr. Naranja also opined that Plaintiff would miss more than three days of work each month.  (A.R. 859).  The ALJ discounted those opinions on two grounds.  As Dr. Naranja's opinions are contradicted, those grounds must be specific and legitimate.  The ALJ first stated that Dr. Naranja's "assigned limitations simply are not consistent with [Plaintiff's] activities of daily living during the adjudicatory period." (A.R. 23).  The ALJ does not provide any supporting analysis for this boilerplate finding.  Moreover, no other portion of the ALJ's decision adequately explains how Plaintiff's daily activities are inconsistent with Plaintiff's alleged disability.  As a result, the ALJ's conclusory finding is not a specific and legitimate basis on which to discount Dr. Naranja's opinion.  *See Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) ("an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it  . . . or criticizing it with boilerplate language that fails to offer a

substantive basis for his conclusion"); *Haggerty v. Astrue*, 474 F. App'x 619 (9th Cir. 2012) (finding that an ALJ provided valid reasons for discounting a medical opinion where the ALJ was "<u>specific</u> when he compiled a long list of [the claimant's] activities, which included driving, cooking, and volunteering at a fire department") (emphasis added).

The ALJ also discounted Dr. Naranja's assessments by stating that "Dr. Naranja's own progress notes typically have [Plaintiff's] GAF score at 60, which is indicative of mild-moderate mental impairments." (A.R. 22-23). This statement fails to acknowledge that Plaintiff's GAF score has varied significantly throughout her psychiatric treatment, ranging from 40-70. (*See, e.g.,* A.R. 803, 805, 807, 809, 852, 937, 941, 942, 987). As of the date of his 2012 assessment, Dr. Naranja indicated that Plaintiff had a GAF score of 40. (A.R. 852). The Ninth Circuit has explained that "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017. Plaintiff's past GAF scores may be a valid consideration in weighing Dr. Naranja's opinions. However, given the significant variability in Plaintiff's GAF scores, the Court does not find that Plaintiff's past GAF scores of 60 are a sufficient *sole* basis to discount Dr. Naranja's assessment of Plaintiff during a time in which she had a much lower GAF score. Accordingly, the Court finds that the ALJ failed to provide specific and legitimate reasons for discounting Dr. Naranja's opinions.

The ALJ's errors in discounting Drs. Berg and Naranja's opinions alone warrant remand. The Court, however, also finds that the ALJ committed harmful legal error in rejecting Plaintiff's testimony. Those errors are explained in the following section.

## 2. The ALJ Failed to Give Clear and Convincing Reasons for Rejecting Plaintiff's Testimony Regarding Plaintiff's Alleged Impairments

When evaluating the credibility of a claimant's testimony regarding subjective pain or symptoms, the ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572

F.3d 586, 591 (9th Cir. 2009).  In the first step, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  The claimant does not have to show that the impairment could reasonably be expected to cause the severity of the symptoms.  Rather, a claimant must only show that it could have caused some degree of the symptoms.  *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If a claimant meets the first step, and there is no evidence of malingering, the ALJ can only reject a claimant's testimony about the severity of his or her symptoms by offering clear and convincing reasons that are supported by substantial evidence in the record.  *Lingenfelter*, 504 F.3d at 1036.  The ALJ cannot rely on general findings.  The ALJ must identify specifically what testimony is not credible and what evidence undermines the claimant's complaints.  *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010).  In weighing a claimant's credibility, the ALJ can consider many factors including: a claimant's reputation for truthfulness, prior inconsistent statements concerning the symptoms, unexplained or inadequately explained failure to seek treatment, and the claimant's daily activities.  *Smolen*, 80 F.3d at 1284; *see also* 20 C.F.R. §  404.1529(c)(4) (Social Security must consider whether there are conflicts between a claimant's statements and the rest of the evidence).  In addition, although the lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his or her credibility analysis. *Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005); *see also* 20 C.F.R. 404.1529(c); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Here, Plaintiff argues that the ALJ erred in discrediting Plaintiff's testimony regarding her subjective symptoms.  In Section 5 of the ALJ's decision, the ALJ explained the two-step process to be used in determining the credibility of a claimant's symptoms.  (A.R. 20-21).  After summarizing Plaintiff's symptom testimony, the ALJ stated that Plaintiff's medically determinable impairments could reasonably be expected

to cause the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms are not entirely credible.  (A.R. 21-22).  The ALJ then provided her reasons for discrediting Plaintiff's testimony.   Because the ALJ did not find that Plaintiff was malingering, those reasons must be clear and convincing and supported by substantial evidence in the record.  *Lingenfelter*, 504 F.3d at 1036.

### i.   Alleged Symptoms Pertaining to Plaintiff's Physical Impairments

The ALJ's reasons for discrediting Plaintiff's testimony regarding her alleged symptoms pertaining to her <u>physical</u> impairments include the following:

1.  The ALJ found that "[a] close review of the record reveals that it was [Plaintiff's] decision to care for her disabled son."  (A.R. 21).  While the reason why a claimant ceased working can be a valid consideration in determining the claimant's credibility, the ALJ does not discuss the precise evidence in the record that led to the ALJ's conclusion.  This invites impermissible speculation as to the grounds for the ALJ's conclusion.  *Brown-Hunter*, 2015 WL 6684997 at *7.

2.  Regarding Plaintiff's diabetes mellitus, the ALJ found that it is not disabling when Plaintiff is compliant with prescribed treatment.  (A.R. 21).  The ALJ cited medical records from Dr. Mushtaq Syed indicating that after Plaintiff lost weight on her prescribed diet, Dr. Syed was able to discontinue Plaintiff's insulin and other diabetic medications.  (A.R. 21-22).  The ALJ also discussed that pulmonary testing revealed "fairly extensive respiratory functioning when a bronchodilator is administered . . . ."  (A.R. 22).  An ALJ may discredit a claimant's testimony that an impairment is disabling if the impairment can be controlled with medication.  *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006).  Here, however, Plaintiff has alleged a number of physical and mental impairments aside from diabetes and asthma.  The Court therefore does not find that the above findings are clear and convincing reasons to discredit Plaintiff's testimony in its entirety.

3.  As to Plaintiff's alleged disabling pain, the ALJ found that the "evidence indicates that many of these problems appear to relate to the strain of moving her son. This pain should have been significantly improved by the hoist installed in her house and the provision of an in-house nurse for eight hours a day."  (A.R. 22).  Yet Plaintiff testified that she injured her back when moving her disabled son.  (A.R. 40, 45-46).  Dr. Shelly Woodward's August 12, 2006 report states that "[a] recently installed hoist has helped with lifting [Plaintiff's son], but the pain continues."  (A.R. 385).  The ALJ does not discuss evidence in the record that suggests that Plaintiff's back has healed since Plaintiff no longer has to lift her son.  An ALJ's speculation does not constitute substantial evidence, let alone clear and convincing evidence.  *See Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (an ALJ's "concerns and speculation" regarding the effects of a claimant's substance abuse did not constitute substantial evidence supporting the rejection of examining psychologist's opinion); *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995) (holding that an ALJ improperly rejected treating and examining physicians' opinions where the rejection was based on "unsupported and unwarranted speculation").

4.  The ALJ engaged in further speculation when explaining that she did not find credible Plaintiff's testimony that she can lift a maximum of ten pounds because "[i]t would seem that [Plaintiff] would have to provide a significant amount of care for her son when a third party is not present to assist her."  (A.R. 22).  Plaintiff, however, asserted that she relies on the assistance of her husband, who is her disabled son's father.  (A.R. 38, 871).  Plaintiff has stated that even though separated from her husband, he is often at her home and is also available for assistance at night if needed.  (A.R. 42, 870).  Plaintiff has also indicated that she relies on the assistance of her mother.  (A.R. 268, 303).  In fact, Plaintiff lives in a trailer on her parent's property.  (A.R. 303).  The ALJ did not

attempt to determine how much assistance and what kind of assistance third parties provide Plaintiff.[6]  Again, speculation is not clear and convincing evidence.

5.  The ALJ stated that "none of [Plaintiff's] treatment providers ever concluded that her back pain warranted physical therapy, steroidal injections or surgery." (A.R. 22). This finding is not supported by the record.  Medical reports show that Plaintiff received steroid injections in her back on June 29, 2011, July 15, 2011, and August 4, 2011 after the provider determined that Plaintiff may benefit from the procedures.  (A.R. 1004, 1006, 1008).  A 2008 medical record notes that Plaintiff "has had physical therapy for her back and neck pain, which she states made her symptoms worse." (A.R. 567).  A 2003 medical record states that Plaintiff tried chiropractic therapy for her back pain, which did not help.  (A.R. 645).

6.  The ALJ recounted that Plaintiff "testified that she has not lifted [her son] since 2002; however, this in contradiction to a progress note from a physician in October 2004 in which the doctor reports that [Plaintiff] has been the 'primary caretaker' of her son for the past two years." (A.R. 22).  Contradictions between the record and a claimant's testimony can be a valid reason for discrediting the claimant's symptom testimony.  *Smolen*, 80 F.3d at 1284.  But the ALJ's example fails to show such a contradiction.  Plaintiff testified that she stopped lifting her son in 2002 because she acquired equipment that would do the lifting for her.  (A.R. 38-39).  Thus, Plaintiff's statement in October 2004 that she is her son's "primary caretaker" does not contradict her statement that she has not lifted her son since 2002.  While the Court has found a number of contradictions between Plaintiff's testimony and evidence in the record,[7] the Court cannot affirm an ALJ's decision on a ground not asserted by the ALJ.  *Brown-*

---

[6] For instance, the ALJ asked Plaintiff how often the nurse assists.  (A.R. 38). When Plaintiff stated "approximately 40 hours a week," the ALJ asked about the weekend.  Plaintiff answered that "[her son's] father will come over," but the ALJ did not ask when the son's father arrives, departs, or how much help he provides.  (*Id.*).

[7] For instance, a November 2006 medical record states that Plaintiff "pick[ed] up son out of bed and fell." (A.R. 554).

*Hunter*, 2015 WL 6684997, *4 ("A reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the error was harmless.").

7. The ALJ found that as of October 2004, Plaintiff "denied any physical limitations (1F/18) and all diagnostic has been rather unremarkable (exhibits 6F, 7F, 13F and 18F)." (A.R. 22). Although the ALJ correctly noted that Plaintiff denied physical limitations during Plaintiff's 2004 intake at Behavioral Healthcare Options, the ALJ does not explain her reasons for concluding that this single record from 2004 outweighs the many records from 2003 through 2012 that do suggest that Plaintiff has some physical limitations. *See Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (an ALJ cannot selectively rely on some entries in a claimant's medical records while ignoring others). Moreover, the fact that diagnostic tests have been unremarkable is a valid consideration in determining Plaintiff's credibility, but it cannot be the sole basis for discounting pain testimony. *Rollins*, 261 F.3d at 857.

8. The ALJ's credibility analysis also discussed Plaintiff's purported daily activities. The ALJ stated that Plaintiff told Dr. Shelly Woodward that Plaintiff "remains very much involved in the daily care of her son, including getting him ready for and taking him to school." (A.R. 22). The ALJ also discussed that Plaintiff provided physical therapy for her disabled son. (A.R. 22, 386). Finally, the ALJ discussed Plaintiff's statements that Plaintiff "still cares for her son and does many household activities." (A.R. 22, 513). The ALJ's first statement mischaracterizes the evidence because Dr. Woodward's report actually states that Plaintiff's <u>mother</u> takes Plaintiff's son to school, which is across the street from Plaintiff and her mother's homes. (A.R. 386). Moreover, all of the statements ignore the significant amount of evidence in the record indicating that Plaintiff (i) relies on the assistance of her mother, husband, and a near full-time nurse and (ii) needs multiple periods of rest throughout the day. (A.R. 41, 267). The ALJ has not adequately explained how Plaintiff's daily activities translate to the ability to sustain competitive employment on a full-time basis. *Garrison*, 759 F.3d at 1016 (stating that the Ninth Circuit has "repeatedly warned that ALJs must be especially

cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day").

### ii.    Alleged    Symptoms    Pertaining    to    Plaintiff's    Mental Impairments

The ALJ's reasons for discrediting Plaintiff's testimony regarding her alleged symptoms pertaining to her <u>mental</u> impairments include the following:

1.  The ALJ discussed that in late 2004, Plaintiff's GAF was 65.  (A.R. 22).  This fails to acknowledge that Plaintiff's GAF scores have varied, ranging from 40 to 70.  For instance, Dr. Naranja stated in November 2010 that Plaintiff's highest GAF for the past year was 55.  (A.R. 785).  To reiterate, an ALJ cannot selectively rely on some entries in a claimant's records while ignoring others.  *See Holohan*, 246 F.3d at 1207-08.

2.  The ALJ noted that "as of September 2005, Plaintiff was showing "no overt psychiatric signs or symptoms.  [Plaintiff] was able to go on a make-a-wish cruise to the Bahamas, and she was taking no psychotropic medications."  (A.R. 22).  Contrary to this assertion, however, the record shows that Plaintiff was taking psychotropic medications as of September 2005.  A September 13, 2005 progress note from Behavioral Healthcare Options states "Pt's psych. meds were continued" and lists Lamictal, Fluoxetine, and Seroquel.  (A.R. 370).  Moreover, Plaintiff testified at the administrative hearing that her disabled son's nurse attended the cruise to assist with her son's care.  (A.R. 44).  While a claimant's ability to travel may in some instances discredit a claimant's testimony,[8] the ALJ does not explain how Plaintiff's participation in a one-time cruise with her husband,[9]

---

[8] In support of the ALJ's reference to Plaintiff's cruise in the ALJ's adverse credibility finding, Defendant cites to *Tommasetti v. Astrue*, 533 F.3d 1035 (9th Cir. 2008).  The claimant in *Tommasetti*, however, traveled to "Venezuela for an extended time to care for an ailing sister."  *Id.* at 1040.  This is in stark contrast to a one-time leisure cruise.

[9] While not clear from the administrative hearing transcript, a medical record states that Plaintiff's husband attended the cruise.  (A.R. 370).

disabled son, and her son's nurse contradicts Plaintiff's testimony that she is unable to sustain full-time employment. The Ninth Circuit has clearly instructed that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *Reddick*, 157 F.3d at 722.

3. The ALJ stated that the "record suggests" that Plaintiff did not develop difficulties with anxiety and panic attacks until March 2006. (A.R. 22). The ALJ does not discuss the precise evidence that led to this conclusion and such evidence is not obvious based on the Court's review of the record. For instance, a medical record indicates that Plaintiff has been on Prozac since at least 2003. (A.R. 685). Plaintiff reported that she attempted suicide two years after her son's 2002 accident. (A.R. 386). Finally, a September 26, 2006 consultative examination states that Plaintiff "is being treated for bipolar disorder for <u>two years</u> for post stress." (A.R. 431) (emphasis added).

For the above reasons, the Court finds that the ALJ failed to provide clear and convincing reasons for discrediting Plaintiff's testimony regarding her symptoms. The following section explains why it is appropriate to remand the case for further proceedings rather than for an award of benefits.

### 3. Remand for Further Proceedings is Appropriate

Ninth Circuit jurisprudence "requires remand for further proceedings in all but the rarest cases." *Treichler*, 775 F.3d at 1101 n.5. The Ninth Circuit, however, has adopted a test to determine when a case should be remanded for payment of benefits in cases where an ALJ has improperly rejected claimant testimony or medical opinion evidence. *Id*. at 1100-01; *Garrison*, 759 F.3d at 1020. This test is commonly referred to as the "credit-as-true" rule, which consists of the following three factors:

      1. Has the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion? *Treichler*, 775 F.3d at 1100-01.

      2. Has the record been fully developed, are there outstanding issues that must be resolved before a disability determination can be made, or would further administrative

proceedings be useful? *Id.* at 1101. To clarify this factor, the Ninth Circuit has stated that "[w]here there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id.*

3. If the improperly discredited evidence were credited as true, would the ALJ be required to find the claimant disabled on remand? *Id.*; *Garrison*, 759 F.3d at 1020.

Where a court has found that a claimant has failed to satisfy one of the factors of the credit-as-true rule, the court does not need to address the remaining factors. *Treichler*, 775 F.3d at 1107 (declining to address final step of the rule after determining that the claimant has failed to satisfy the second step). Moreover, even if all three factors are met, a court retains the discretion to remand a case for additional evidence or to award benefits. *Id.* at 1101-02. A court may remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1021. In *Treichler*, the Ninth Circuit noted that "[w]here an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." 775 F.3d at 1105.

Here, the vocational expert testified that Plaintiff would not be able to maintain employment if Plaintiff's impairments would cause (i) Plaintiff to miss three days of work per month or (ii) be off task approximately fifteen percent of the work day. (A.R. 56). Drs. Berg and Naranja, whose opinions were improperly discounted by the ALJ, concluded that Plaintiff's mental impairments would cause Plaintiff to miss more than three days of work each month. (A.R. 859, 984). The record raises crucial questions as to whether Plaintiff's impairments would in fact cause her to miss three days of work per month or be off task approximately fifteen percent of the work day. The record also raises crucial questions as to whether Plaintiff's impairments may be properly controlled with diet and medication. The record is filled with conflicting and ambiguous evidence. For example:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1.  It is unclear exactly how much care Plaintiff provides for her son and whether such care translates to the ability to sustain competitive, full-time employment.  The record suggests that the nurse for Plaintiff's son only works every Tuesday through Friday and every other Monday.  (A.R. 870).  This begs the question as to who provides the substantive care to Plaintiff's son on the nurse's off days.  Plaintiff's assertion that she relies on the help of her mother conflicts with a January 28, 2009 progress note stating that Plaintiff is "taking care of [her] mother + father other than [her] son."  (A.R. 959).  Plaintiff has also stated that "her son needs her to care for him."  (A.R. 873).  In April 2004, Dr. Neeta Soni reported that Plaintiff "could not attend the diabetic classes as she has to take care of a 12-year old son who is chronically sick."  (A.R. 661).  A February 2012 medical record noted that Plaintiff "is a caregiver for her son . . . ."  (A.R. 914). The record also suggests that Plaintiff may have cleaned her entire home on her own as it indicated that Plaintiff stated "I wanted to clean my house and get it done." (*Id.*).

2.  On the other hand, it was assessed during a June 2011 medical appointment that Plaintiff "can no longer physically care for her son and the nurse and her husband are helpful."  (A.R. 885).  Plaintiff stated that her mother helps schedule appointments for Plaintiff and Plaintiff's son.  (A.R. 268).  Dr. Woodward opined that Plaintiff would not be capable of managing disability benefits in Plaintiff's own interest.  (A.R. 394).   In addition, Plaintiff reported to Dr. Woodward the "chronic presence of suicidal ideation" and feeling "scared to be around people."  (A.R. 387).  Plaintiff stated that her distress regarding Dr. Woodward's evaluation caused her to be more than fifteen minutes late to the appointment.  (A.R. 385, 387).

3.  It is unclear from the record whether Plaintiff's alleged impairments necessitate Plaintiff's frequents naps and rest periods.  (A.R. 267).  During a February 2012 medical appointment, Plaintiff attributed "her sedated state to staying up with her son last night." (A.R. 914).

4.  In December 2008, Plaintiff stated that a back brace "seems to help [with her back pain] at times."  (A.R. 564).  Plaintiff also stated that "medication seems to help manage" her pain.  (*Id*.).

5.  A 2005 medical record states that Plaintiff's "depression is being handled by her psychiatrist.  It is stable on current medications. . . . Back pain is stable on current medical regime. . . . The patient is progressively working out and feeling better.  Diabetes is very well controlled . . . ."  (A.R. 596).

6.  In September 2011, Plaintiff stated that she "believes her mood is relatively stable."  (A.R. 898).  In November 2011, Plaintiff denied all side effects to her medications and "report[ed] being happy with the relief of [signs and symptoms] with these medications."  (A.R. 906).  Plaintiff also reported no issues with falling or staying asleep, energy level, or appetite.  (*Id*.).  This is corroborated by an overnight polysomnogram conducted in 2007 that "demonstrated normal sleep efficiency of 90%." (A.R. 571).

7.  Plaintiff also reported no issues with falling or staying asleep in January 2012. (A.R. 910).  Plaintiff reported taking her medications everyday and stated "I feel like I am doing a lot better.  I don't have anxiety or feel like I am going to explode."  (*Id*.).

8.  A June 2012 progress note stated that Plaintiff's "blood pressure is well controlled with medication" and that Plaintiff's "blood sugar is also well controlled." (A.R. 929).  The note also stated that Plaintiff takes Lasix and "now her leg edema is much better, it has much much improved from before."  (*Id*.).

9.  Plaintiff has admitted to "drinking excessive amount[s] of fluids."  (A.R. 895). It is unclear how this may be affecting her health.

The above factual conflicts and questions are significant and should be resolved through further administrative proceedings.  *See Treichler*, 775 F.3d at 1105 (finding that crucial questions as to the extent of a claimant's impairment given inconsistencies between the claimant's testimony and the medical evidence in the record are "exactly the sort of issues that should be remanded to the agency for further proceedings"); *see also*

*Greger v. Barnhart* 464 F.3d 968, 972 (9th Cir. 2006) (stating that so long as the ALJ "specifically identif[ies] what testimony is credible and what testimony undermines the claimant's complaints . . . questions of credibility and resolutions of conflicts in the testimony are functions solely of the [ALJ]") (citation omitted).

### III. CONCLUSION

Based on the foregoing, the Court finds that the decision of the Commissioner of Social Security is not supported by substantial evidence in the record as a whole and is not based on proper legal standards.  Accordingly,

**IT IS ORDERED** reversing the decision of the Commissioner of Social Security and remanding the case to the Commissioner for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).  The ALJ shall issue a new decision that is consistent with the applicable law as set forth in this Order.  The ALJ, however, is not precluded from reopening the hearing to receive additional evidence if deemed appropriate.  The Clerk of Court is directed to enter judgment accordingly.

Dated this 18th day of November, 2015.

_____
Eileen S. Willett
United States Magistrate Judge